# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Percy Price, individually and behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>The Goodyear Tire & Rubber Company; Compagnie Générale des Établissements Michelin SCA; Michelin North America Inc.; Bridgestone Corporation; Bridgestone Americas, Inc.; Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Nokian Tyres plc; Nokian Tyres North America, Inc.; Nokian Tyres Inc.; Nokian Tyres U.S. Operation LLC; Pirelli & C. S.p.A; Pirelli Tire LLC; Hankook Tire & Technology Co., Ltd.; Hankook Tire America Corp.; Yokohama Rubber Co., Ltd.; Yokohama Tire Corporation; Toyo Tire Corporation; Toyo Tire U.S.A. Corp.; Kumho Tire Co.; Kumho Tire U.S.A.; Sumitomo Rubber Industries, Ltd.; Sumitomo Rubber North America, Inc.; GITI Tire Global Trading Pte. Ltd.; and Giti Tire (USA) Ltd.,<br><br>*Defendants*. | **Case No.: 1:24-cv-1981**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Percy Price ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief under the antitrust laws of the United States, and alleges as follows:

## I.     NATURE OF ACTION

1.     This antitrust class action stems from a conspiracy among the world's largest manufacturers of new replacement tires for passenger cars, vans, trucks, and buses ("Class Tires") to unlawfully fix, raise, maintain, and/or stabilize the prices of Class Tires sold in the United States.

2.     Plaintiff alleges that Defendants engaged in a conspiracy to restrain trade by participating in an agreement or understanding to raise and maintain prices for Class Tires at artificially high levels in the United States. As a direct result of Defendants' conspiracy, Plaintiff and members of the Class paid artificially higher prices for Class Tires and thereby suffered antitrust injury.

3.     Replacement tires replace the original tires that car manufacturers provide with a new vehicle. The replacement tire market in the United States was valued at approximately $57 billion in 2023. Passenger Vehicles accounted for $37.6 billion of that value while light trucks and commercial trucks accounted for $8.5 billion and $8.4 billion, respectively. Agriculture and off-road vehicle tires, which are not part of the proposed Class definition, account for the remaining value.

4.     On January 30, 2024, the European Commission ("EC") conducted unannounced raids at a number of Defendants' offices, as confirmed by Defendants themselves, as part of an investigation into suspected price coordination among tire producers.[1] The EC investigation is

---

[1] https://www.reuters.com/business/autos-transportation/eu-antitrust-regulators-raid-tyre-makers-concerns-about-possible-cartel-2024-01-30/

focused on the sale of Class Tires sold in Europe.[2]

5.　　Evidence of an unlawful agreement to fix the prices of Class Tires includes unprecedented and frequent parallel price increase announcements and public signaling, which would be against the economic self-interest of individual tire manufacturers in the absence of an agreement to fix prices, and the EC investigation into similar conduct.

6.　　The market for Class Tires is also highly susceptible to collusion because it is highly concentrated and dominated by a handful of companies, there are significant barriers to entry for new tire manufacturers, demand for Class Tires is inelastic, common membership in trade associations provides Defendants the opportunity to exchange competitive information, and the tire industry has a history of antitrust violations.

## II.　　JURISDICTION AND VENUE

7.　　This Court has federal question jurisdiction pursuant to the federal antitrust laws invoked herein, including the Herman Act and Clayton Antitrust Act, *e.g.*, 28 U.S.C. § 1331, 28 U.S.C. § 1337(a), and 15 U.S.C. § 15(a).

8.　　Venue is appropriate in this District under Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c) and (d)), because one or more of the Defendants reside or transact business in this District, is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

9.　　This Court has personal jurisdiction over each Defendant because each Defendant or its subsidiary: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Class Tires throughout

---

[2] *Id*.

the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d) engaged in an antitrust conspiracy that was intended to and did have the direct, foreseeable effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District. The activities of Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on interstate commerce in the United States.

10.    No other forum would be more convenient for the parties and witnesses to litigate this case.

### III.    PARTIES

#### A.    Plaintiff

11.    Plaintiff Percy Price is a resident of the State of New Jersey, residing in Sewell, New Jersey. He purchased Class Tires within the Commonwealth of Pennsylvania in the city of Philadelphia directly from Defendant Goodyear Tire & Rubber Company ("Goodyear") during the Class Period defined below and at elevated prices caused by the conspiracy alleged herein.

#### B.    Defendants

#### Goodyear Defendant

12.    Goodyear is an Ohio corporation with its headquarters in Akron, Ohio. Goodyear is one of the world's leading tire companies and has a significant presence both in the U.S. and globally. It acquired Cooper Tire & Rubber Company in 2021 for $2.5 billion. Goodyear manufactures and sells Class Tires under the brands including but not limited to Goodyear, Cooper, Dunlop, Kelly, Debica, Sava, Fulda, Mastercraft, and Roadmaster. During the Class Period, Goodyear manufactured and sold Class Tires globally, including in the United States, both directly

and through its predecessors, affiliates, and/or subsidiaries.

**Michelin Defendants**

13.     Defendant Compagnie Générale des Établissements Michelin SCA ("Michelin") is a French corporation with its primary place of business in Clermont-Ferrand, which is in the Auvergne region of France. During the Class Period, Michelin manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

14.     Defendant Michelin North America Inc., ("Michelin America") is a New York corporation headquartered in Greenville, South Carolina. During the Class Period, Michelin America manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

15.     Michelin America is a wholly owned subsidiary of Michelin. Michelin and Michelin America, collectively, are referred to herein as the "Michelin Defendants."

**Bridgestone Defendants**

16.     Defendant Bridgestone Corporation ("Bridgestone") is a Japanese corporation with its principal place of business in Tokyo, Japan. Bridgestone is the world's largest tire company. During the Class Period, Bridgestone manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

17.     Defendant Bridgestone Americas, Inc. ("BA") is responsible for the operations of Bridgestone in the Americas. BA is a wholly owned subsidiary of Bridgestone. BA is incorporated in Nevada with its principal place of business in Nashville, Tennessee, and oversees a wide range of activities, including tire production, sales, and other automotive services. During the Class Period, BA manufactured and sold Class Tires in the United States, both directly and through its

predecessors, affiliates and/or subsidiaries.

18.     BA and Bridgestone, collectively, are referred to herein as "Bridgestone" or the "Bridgestone Defendants."

**Continental Defendants**

19.     Defendant Continental Aktiengesellschaft ("Continental AG") is a German company with its principal place of business in Hanover, Germany. During the Class Period, Continental manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

20.     Defendant Continental Tire the Americas, LLC ("Continental US") is incorporated in Ohio with its headquarters in Fort Mill, South Carolina, and oversees various activities related to tire manufacturing, sales, and distribution in the United States. Continental US is a wholly owned subsidiary of Continental AG. During the Class Period, Continental US manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

21.     Continental US and Continental AG, collectively, are referred to herein as "Continental" or the "Continental Defendants."

**Nokian Defendants**

22.     Defendant Nokian Tyres plc ("Nokian") is incorporated and headquartered in Nokia, Finland. During the Class Period, Nokian manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

23.     Defendant Nokian Tyres North America, Inc. ("Nokian NA") is incorporated in Delaware and headquartered in Nashville, Tennessee. It is a fully owned subsidiary of Nokian

Tyres U.S. Holdings Inc., and a subsidiary of Nokian Tyres plc. During the Class Period, Nokian NA manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

24.      Defendant Nokian Tyres Inc. is a corporation organized under the laws of the State of Delaware. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. During the Class Period, Nokian Tyres Inc. manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

25.      Defendant Nokian Tyres U.S. Operation LLC ("Nokian U.S.") is a limited liability company organized in Dayton, Tennessee. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

26.      At times Nokian, Nokian NA, Nokian Tyres Inc., and Nokian U.S., collectively, are referred to herein as "Nokian" or the "Nokian Defendants."

**Pirelli Defendants**

27.      Defendant Pirelli & C. S.p.A. ("Pirelli") is headquartered in Milan, Italy. During the Class Period, Pirelli manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

28.      Defendant Pirelli Tire LLC ("PTL") is a limited liability company organized in Delaware with its principal place of business in Rome, Georgia. PTL is a wholly owned subsidiary of Pirelli. During the Class Period, PTL manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

29.      PTL and Pirelli, collectively, are referred to herein as "Pirelli" or the "Pirelli Defendants."

**Hankook Defendants**

30.    Hankook Tire & Technology Co., Ltd. ("Hankook") is headquartered in Seoul, South Korea. During the Class Period, Hankook manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

31.    Defendant Hankook Tire America Corp. ("HTAC") is a New Jersey corporation headquartered in Nashville, Tennessee. HTAC is a wholly owned subsidiary of Hankook. During the Class period, Hankook manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates and/or subsidiaries.

32.    Hankook and HTAC, collectively, are referred to herein as "Hankook" or the "Hankook Defendants."

**Yokohama Defendants**

33.    Defendant Yokohama Rubber Co., Ltd. ("Yokohama") is headquartered in Tokyo, Japan, and is a global tire and rubber company. During the Class Period, Yokohama manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

34.    Defendant Yokohama Tire Corporation ("YTC") is a California corporation with its principal place of business in Santa Ana, California. YTC is a wholly owned subsidiary of Yokohama. During the Class Period, Yokohama manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

35.    YTC and Yokohama, collectively, are referred to herein as "Yokohama" or the "Yokohoma Defendants."

**Toyo Defendants**

36.    Defendant Toyo Tire Corporation ("Toyo") is incorporated in Japan and headquartered in Osaka, Japan. During the Class Period, Toyo manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

37.    Defendant Toyo Tire U.S.A. Corp. ("Toyo USA") is a California Corporation responsible for Toyo operations in the United States, including the distribution and sale of tires. Toyo USA is headquartered in Cypress, California. Toyo USA is a wholly owned subsidiary of Toyo. During the Class Period, Toyo USA manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

38.    Toya and Toyo USA, collectively, are referred to herein as "Toyo" or the "Toyo Defendants."

**Kumho Defendants**

39.    Defendant Kumho Tire Co. Inc. ("Kumho") is incorporated in South Korea and headquartered in Gwangju, South Korea. During the Class Period, Kumho manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

40.    Kumho Tire U.S.A., Inc. ("Kumho USA") is a Georgia corporation, headquartered in Atlanta, Georgia. Kumho USA is a wholly owned subsidiary of Kumho. During the Class Period, Kumho USA manufactured and sold Class Tires in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

41.    Kumho and Kumho USA, collectively, are referred to herein as "Kumho" or the "Kumho Defendants."

**Sumitomo Defendants**

42.     Defendant Sumitomo Rubber Industries, Ltd. ("Sumitomo") is a Japanese tire and rubber company headquartered in Kobe, Japan. During the Class Period, Sumitomo manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

43.     Defendant Sumitomo Rubber North America, Inc. ("Sumitomo America") is incorporated in California with its principal place of business in Rancho Cucamonga, California. Sumitomo America is a wholly owned subsidiary of Sumitomo. Sumitomo America is responsible for the sales, marketing, and distribution of Sumitomo tires in the United States. Sumitomo acquired the Falken Tire brand in 2003, taking over from its previous owner, Ohtsu Rubber & Tire. Since then, Falken has operated as a standalone brand focusing on ultra-high-performance products, with Sumitomo America. serving as its corporate headquarters in Rancho Cucamonga, California. During the Class Period, Sumitomo America manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

44.     Sumitomo and Sumitomo America, collectively, are referred to herein as "Sumitomo" or the "Sumitomo Defendants."

**Giti Defendants**

45.     GITI Tire Global Trading Pte. Ltd. ("Giti") is incorporated and headquartered in Singapore. During the Class Period, Giti manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

46.     Giti Tire (USA) Ltd. ("Giti USA") is a Delaware corporation headquartered in Rancho Cucamonga, California. Giti USA is a wholly owned subsidiary of Giti. During the Class

Period, Giti manufactured and sold Class Tires globally, including in the United States, both directly and through its predecessors, affiliates, and/or subsidiaries.

47.    Giti and Giti USA, collectively, are referred to herein as "Giti" or the "Giti Defendants."

## C.    Co-Conspirators

48.    In addition to the named Defendants, other entities and individuals participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. Specifically, these include Defendants' board of directors, officers, employees, or agents.

49.    Each Defendant's agents operated under the authority and apparent authority of its principals.

50.    Each Defendant through its subsidiaries, affiliates, and agents operated as a single unified entity.

51.    Various persons and/or companies not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

52.    Defendants are jointly and severally liable for the acts of their co-conspirators, whether or not those co-conspirators are named as Defendants in this Complaint.

## IV.    FACTUAL ALLEGATIONS

## A.    The Replacement Tire Market

53.    The Defendants manufacture and sell original equipment manufacturer tires ("OEM Tires") and replacement tires in the United States.

54.    OEM Tires are specified by the vehicle manufacturer and fitted to new vehicles.

Vehicle manufacturers work with tire manufacturers to select tires that fulfill various performance standards for new model vehicles.

55.    By contrast, replacement tires are purchased by consumers to replace worn out or damaged OEM Tires or if the vehicle owner desires different performance traits, such as better traction, fuel efficiency, or durability. Replacement tires can be the same brand and model as the OEM Tires or a completely different brand and type, allowing for preferences based on driving conditions, performance, and budget.

56.    Replacement tires are manufactured using many different materials, including natural rubber to resist tears, synthetic rubber polymers to improve traction and maintain air pressure, steel wire and textile cord for stability, and a soot-like filler called carbon black to reinforce the rubber.[3] Synthetic rubber and carbon black, which together make up roughly half the weight of a car tire, are made from petroleum.[4]

57.    Defendants manufacture and sell replacement tires directly to various types of customers, including tire retail chains and dealerships, automobile manufacturers, commercial fleet operators (businesses that operate large fleets of vehicles, such as logistics companies, bus lines, and rental car companies), government and public sector entities, wholesalers and distributors, online retailers, and automotive service and repair shops.

58.    Many Defendants also have retail and e-commerce websites to sell directly to consumers in the United States, including, but are not limited to, Goodyear, Michelin, Bridgestone, and Pirelli.

59.    Goodyear owns and operates approximately 554 Goodyear Auto Service centers

---

[3] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices

[4] *Id.*

across the United States, providing tire sales, repairs, and automotive services.[5] Goodyear also owns Just Tires, a retail chain focused primarily on tire sales and tire-related services. Just Tires had over 500 locations in the United States as of December 31, 2023.[6]

60.    Bridgestone owns and operates approximately 2,226 Firestone Complete Auto Care stores, which sell Bridgestone and Firestone tires, along with a range of automotive repair and maintenance services.[7] Bridgestone also owns hundreds of Tire Plus stores, which also sell Class Tires, throughout the United States.[8]

61.    National Tire Warehouse, a joint venture between Michelin and Sumitomo, has more than 100 distribution centers and sold Class Tires directly to consumers in the United States during the Class Period.[9]

62.    In 2023, the market share for retail tire sales in the United States was as follows: independent tire dealerships (66%); auto dealerships (9.5%); mass merchandisers (9%); warehouse clubs (8.5%); tire-company owned dealerships (6%); and miscellaneous outlets (1%).[10]

63.    Independent tire dealerships are tire dealerships that are not owned by tire manufacturers. Sixty-two percent of independent tire dealerships have one location, while 30% have eleven or more locations.[11]

---

[5] MTD, Modern Tire Dealer, An Industry in Transition. January 2024: https://issuu.com/docs/90275efd97e2e45ff60a4b28de6dad42?fr=xKAE9_zU1NQ

[6]    https://www.scrapehero.com/location-reports/Just%20Tires-USA/#:~:text=There%20are%20535%20Just%20Tires,as%20of%20December%2021%2C%202023.

[7] *See supra* fn. 5.

[8] https://rentechdigital.com/smartscraper/location-reports/tiresplus-locations-in-united-states

[9] *See supra* fn. 5.

[10] *Id.* at 36.

[11] *Id.*

64.    In 2023, the market share for wholesale tire sales in the United States was as follows: independent wholesale/distributors (80%); tire-company owned (10.5%); and miscellaneous outlets (9.5%).[12]

65.    For passenger vehicles, tires can be categorized based on several criteria, including the type of vehicle, driving conditions, and performance needs. The primary types of replacement tires available for passenger vehicles are all-season, summer, winter/snow, performance, touring, highway, all-terrain, mud, eco-friendly, and run-flat.

**B.    The Replacement Tire Market Is Susceptible to Collusion**

        *i.    Barriers to Entry*

66.    There are high barriers to entry for any new firm seeking to enter the replacement tire market. Such high barriers prevent the threat of new entrants potentially undercutting a collusive agreement to raise prices. Any new entrant into the market would face expensive and lengthy start-up costs, including millions of dollars associated with research and development, manufacturing plants, equipment, energy, and transportation.

67.    Defendants have established strong brand reputations over the course of many years. Any new market entrant would also need to invest significant resources into marketing and quality assurance to compete against these well-known brands.

68.    The tire manufacturing process is capital-intensive, requiring substantial investment into machinery, technology, and raw materials. Developing Class Tires that meet safety, performance, and environmental standards also involves considerable research and development expense.

69.    Defendants have extensive distribution networks and relationships with retailers,

---

[12] *Id.*

auto manufacturers, and service centers. Any new entrant would need to build such networks and relationships from scratch or secure partnerships, without the benefit of an established reputation.

70.    The tire industry is subject to strict regulations regarding safety, environmental impact, and performance standards. Complying with these regulations would require any new entrant to spend additional resources on testing and compliance.

71.    Defendants benefit from economies of scale that allow them to manufacture Class Tires efficiently. Any potential new entrant with lower production volumes would find it difficult to compete on price and profitability.

ii.    *Inelasticity of Demand*

72.    Price elasticity of demand is a measure of the change in demand for a product in relation to any price change. Demand is inelastic when an increase in price does not cause lower demand. Such inelastic demand facilitates collusion because it allows conspirators to raise prices without fear that purchasers will substitute cheaper alternatives.

73.    During the Class Period, demand for Class Tires was, and continues to be, inelastic because Class Tires are essential for vehicle operation, making demand for them relatively insensitive to price changes. Consumers purchase Class Tires even if prices increase because tires are necessary for the operation, safety, and vehicle maintenance.

74.    Most consumers purchase Class Tires out of sheer necessity, with little time to comparison shop and limited information.[13] According to Phillip Kane, a former executive at Goodyear and Pirelli, "Consumers don't really have a frame of reference on what a tire should cost, because you only buy them every few years."[14]

---

[13] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices

[14] *Id.*

75.    An economist named Bill Wood who studies the plastics and rubber industries put it this way: "[t]hey can tell you it's going to cost whatever it's going to cost, and as long as it doesn't sound like it's made out of gold, you're going to say, 'OK.'"[15]

76.    While there are many different brands and types of automobile tires, substitution by consumers is limited to the universe of products manufactured by the Defendants. No viable substitute for Class Tires exists. Demand for Class Tires is also more inelastic in the short run. For example, a consumer with a punctured tire is relatively price insensitive. While there may be options within the universe of tire brands and specifications manufactured by the Defendants, there is an immediate need for a replacement tire of some sort.

### iii.    Opportunities to Collude

77.    Defendants are members of various trade associations and professional organizations which allow them to facilitate the conspiracy alleged herein. Defendants attend numerous regular events where they have opportunities to communicate with each other in person. Regular and frequent attendance by Defendants' executives at trade association meetings provides ample opportunities to collude.

78.    Each Defendant is a member of the United States Tire Manufacturers Association ("USTMA"), the national trade association for manufacturers of Class Tires in the United States.[16] Top executives from the Defendants are members of the Board of Directors of the USTMA.[17]

79.    The USTMA holds annual conferences and other meetings, giving Defendants

---

[15] Id.

[16] https://www.ustires.org/about-us

[17] Id.

ample opportunity to collude.

    *iv.*  *History of Antitrust Violations*

80. The tire industry has as history of antitrust violations in the United States. In October 2011, Bridgestone pleaded guilty and paid a $28 million fine for price-fixing and Foreign Corrupt Practices Act violations in the marine hose industry but did not disclose at the time of the plea that it had also participated in an anti-vibration rubber parts conspiracy.[18]

81. On February 13, 2014, Bridgestone agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in cars sold in the United States and elsewhere.[19]

82. According to the plea deal:

> Bridgestone and its co-conspirators carried out the conspiracy through meetings and conversations in which they discussed and agreed upon bids, prices and allocating sales of certain automotive anti-vibration rubber products. After exchanging this information with its co-conspirators, Bridgestone submitted bids and prices in accordance with those agreements and sold and accepted payments for automotive anti-vibration rubber parts at collusive and noncompetitive prices. Bridgestone's involvement in the conspiracy to fix prices of anti-vibration rubber parts lasted from at least January 2001 until at least December 2008.[20]

83. In 2019, Defendants Bridgestone and Continental were among fifty-two automotive suppliers that paid a total of $23 million in settlements for antitrust law violations brought by the California Attorney General.[21]

---

[18] https://www.justice.gov/opa/pr/bridgestone-corp-agrees-plead-guilty-price-fixing-automobile-parts-installed-us-cars#:~:text=In%20October%202011%2C%20Bridgestone%20pleaded,anti%2Dvibration%20rubber%20parts%20conspiracy.

[19] *Id.*

[20] *Id.*

[21] https://www.tyrepress.com/2019/12/tyremakers-among-52-automotive-suppliers-in-us23-million-antitrust-settlement/

*v.    Market Concentration*

84.    The smaller the number of firms in a market, the easier it is for market participants to collude. . Defendants controlled virtually all of the U.S. Tire market during the Class Period, with the top four companies controlling nearly two-thirds of the market.

85.    As of 2022, Goodyear, Michelin, Bridgestone, and Continental accounted for approximately 70% of the entire replacement tire market in the United States.[22] These companies also have subsidiary brands, including: Goodyear (Goodyear, Cooper Tires, Dunlop, and Kelly), Michelin (Michelin, BF Goodrich, and Uniroyal), and Bridgestone (Bridgestone and Firestone).[23] Defendants Hankook and Yokohama each control roughly 4% of the market.[24]

86.    Due to its high market concentration, the U.S. Tire market has the characteristics of an oligopoly.



Tire Market Share

---

[22] https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are-getting-bigger-how-can-the-davids-compete/

[23] *Id.*

[24] *Id.*

**C.**     **Defendants Announced Unprecedented Prices Increases During the Class Period**

87.     During the Class Period, pricing of Class Tires has been inconsistent with a competitive market. This pricing behavior, combined with other features of the market, suggests the existence of an illegal conspiracy to fix, raise, maintain, and/or stabilize prices for Class Tires.

88.     From approximately 2011 to 2020, the prices of Class Tires were relatively stable, with only minor fluctuations that occurred gradually over time. By contrast, in the past four years, tire prices surged as a result of frequent, synchronized price hikes by the Defendants:



89.     There were at least 65 price announcements for Class Tires during the Class Period

among the Defendants.[25]

90.     On or about February 3, 2020, Sumitomo announced a price increase of up to 5% on Falken tires, effective March 1, 2020.

91.     On March 3, 2020, Goodyear announced a price increase of up to 5% on Goodyear and Kelly-brand consumer tires, effective April 1, 2020.[26]

92.     On or about March 12, 2020, Pirelli stated that it would increase prices in the U.S. for tires for cars and light trucks of up to 5% on average, varying by line and tire size, to take effect on April 6, 2020.

93.     On or about October 1, 2020, Bridgestone announced that its "Firestone Truck Bus" and "radial" tire prices would increase between 5% and 8% on November 1, 2020.

94.     On or about October 6, 2020, Yokohama announced a price increase of up to 5% on its consumer tires for high-performance, light truck and passenger vehicle tires sold in the United States to take effect on November 1, 2020.

95.     On or about November 13, 2020, Goodyear announced a 5% increase on Goodyear- and Dunlop-brand consumer tire prices, effective December 1, 2020.[27]

96.     On or about November 13, 2020, Sumitomo announced a price increase on its Falken passenger and light truck and medium truck tires. The medium truck tire increase announced to dealers of up to 6% will have an effective date of December 1, 2020. The passenger and light truck tire increase of up to 8% will have an effective date of January 1, 2021.

---

[25] All of the following price announcements except for Goodyear can be found on the following website: https://www.tirereview.com/tag/price-increase/

[26] https://www.moderntiredealer.com/industry-news/wholesale-distribution/article/11533513/goodyear-will-hike-consumer-tire-prices-2020-03-04

[27] https://www.moderntiredealer.com/topics/industry-news/article/11475914/goodyear-consumer-tire-prices-are-on-their-way-up-2020-11-13

97.     On or about December 2, 2020, Bridgestone announced a price increase on all Passenger light truck tires, effective January 1, 2021.

98.     On or about December 3, 2020, Pirelli announced a price increase on car and light truck tires, effective January 1, 2021.

99.     On or about December 22, 2020, Michelin announced a 5% price increase on select Michelin and BF Goodrich passenger and light truck tires, effective February 1, 2021.

100.    On or about January 6, 2021, Continental announced a price increase on select "Continental" and "General" passenger and light truck tires, effective March 1, 2021.

101.    On or about March 1, 2021, Michelin announced a price increase of up to 8% on select Michelin, BF Goodrich, and Uniroyal passenger and light truck tires, effective April 1, 2021.

102.    On or about March 3, 2021, Goodyear announced a price increase up to 8% on Goodyear, Dunlop, and Kelly-brand tires, effective on April 1, 2021.[28]

103.    On or about March 9, 2021, Pirelli announced a price increase of up to 7% on car and light truck tires, effective April 15, 2021.

104.    On or about March 15, 2021, Toyo announced a price increase of up to 6% on consumer and commercial tires, effective May 1, 2021.

105.    On or about March 24, 2021, Bridgestone announced a price increase of up to 8% for select passenger and light truck tires, effective May 1, 2021.

106.    On or about April 1, 2021, Yokohama announced a price increase on all its consumer tires, effective May 1, 2021.

107.    On or about April 1, 2021, Bridgestone announced a price increase of 8% on

---

[28] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03

Firestone brand truck and bus radial tires sold in the U.S. and Canada, effective May 1, 2021.

108.    On or about April 12, 2021, Sumitomo announced a price of up to 8% on Dunlop, Falken and Ohtsu brand passenger, light truck, and medium truck tires and Dunlop motorcycle tires, effective May 1, 2021.

109.    On or about May 3, 2021, Goodyear announced a price increase up to 8% on Goodyear, Dunlop, and Kelly-brand consumer tires, effective June 1, 2021.[29]

110.    On or about May 6, 2021, Continental announced a price increase on select "Continental" and "General" passenger and light truck tires, effective July 1, 2021.

111.    On or about May 19, 2021, Michelin announced price increases of up to 6% on select Michelin, BF Goodrich, and Uniroyal passenger and light truck tires, effective July 1, 2021.

112.    On or about May 19, 2021, Pirelli announced a price increase of up to 6% on car and light truck tires, effective July 1, 2021.

113.    On or about June 1, 2021, Bridgestone announced a price increase of up to 8% for select Bridgestone, Firestone, and Fuzion passenger and light truck tires, effective July 1, 2021.

114.    On or about June 14, 2021, Hankook announced a price increase of up to 7% on its passenger car and light truck tires, effective August 1, 2021.

115.    On or about June 15, 2021, Toyo announced a price increase on the dealer base prices across all tire categories of up to 8.5%, effective August 1, 2021.

116.    On or about July 6, 2021, Yokohama announced a price increase on its consumer tires and commercial truck tires, effective August 1, 2021.

117.    On or about July 6, 2021, Sumitomo announced a price increase of up to 8% on

---

[29] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03

Falken and Ohtsu brand passenger, light truck, and medium truck tires, effective August 1, 2021.

118.    On or about August 6, 2021, Goodyear announced a price increase on consumer tires for the fourth time in less than a year, effective September 1, 2021.[30]

119.    On or about August 30, 2021, Continental announced price increases on passenger and light truck tires, effective October 1, 2021.

120.    On or about August 31, 2021, Pirelli announced that it will increase prices up to 8% on passenger car and light truck tires, effective October 2021.

121.    On or about September 10, 2021, Giti announced a price increase, effective October 1, 2021.

122.    On or about September 17, 2021, Hankook announced a price increase of up to 6% on passenger, light truck and commercial truck tires, effective November 1, 2021.

123.    On or about September 21, 2021, Sumitomo announced a price increase of up to 10% on Falken and Ohtsu brand passenger, light truck, and medium truck, effective October 1, 2021.

124.    On or about October 19, 2021, Sumitomo announced a price on its Falken medium truck tires, effective December 1, 2021.

125.    On or about October 21, 2021, Yokohama announced a price increase on its consumer replacement tires, effective November 1, 2021.

126.    On or about November 9, 2021, Continental announced a price increase on select passenger and light truck tires, effective January 3, 2022.

127.    On or about December 22, 2021, Sumitomo announced a price increase of up to 8%

---

[30] https://www.moderntiredealer.com/retail/article/11469453/goodyear-and-cooper-consumer-tire-prices-are-going-up

on Falken, Ohtsu, and private brand passenger and light truck tires, effective January 1, 2022.

128.    On or about December 22, 2021, Toyo announced a price increase on dealer base prices on passenger cars, light truck, and commercial truck tire patterns of up to 10%, effective February 1, 2022.

129.    On or about December 28, 2021, Michelin announced a price increase of up to 12% on select Michelin, BF Goodrich, and Uniroyal passenger and light truck tires, effective January 1, 2022.

130.    On or about January 1, 2022, Goodyear announced price increases of up to 12% on consumer and up to 14% on commercial/OTR (Off the Road) tires across all brands.[31]

131.    On or about January 3, 2022, Pirelli announced a price increase of up to 10% on car and light truck tires, effective January 17, 2022.

132.    On or about January 4, 2022, Giti announced price increases on all Giti-produced passenger and light truck and TBR (Truck, Bus, and Radial), tires of up to 10%, starting in January 2022.

133.    On or about January 10, 2022, Yokohama announced a price increase on its consumer tires and commercial trucks, effective February 1, 2022.

134.    On or about January 12, 2022, Bridgestone announced a price increase of up to 14% on Bridgestone and Firestone truck and TBR tires, effective February 1, 2022.

135.    On or about February 7, 2022, Michelin announced price increases of up to 5% on select Michelin, BF Goodrich, and Uniroyal passenger and light truck winter tires, effective April 1, 2022.

136.    On or about February 21, 2022, Sumitomo announced price increases on Falken

---

[31] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1

and Ohtsu brand passenger car, light truck, and medium truck tires, effective March 1, 2022.

137.    On or about March 1, 2022, Continental announced price increases on select continental passenger and light truck tires, effective April 1, 2022.

138.    On or about March 2, 2022, Bridgestone announced price increases of up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck tires, effective April 1, 2022.

139.    On or about March 23, 2022, Pirelli announced price increases of up to 10% for its car and light truck tires, effective April 11, 2022.

140.    On or about March 24, 2022, Giti announced that price increases on all Giti-produced Passenger and light truck, and TBR tires of up to 8%, starting in May 2022.

141.    On or about April 1, 2022, Hankook announced a price increase on Hankook and Laufenn brand passenger and light truck products of up to 8%, effective May 1, 2022.

142.    On or about May 11, 2022, Michelin announced price increases across its brands ranging from 5-12% on the majority of passenger, light truck, and motorcycle tires and service of up to 9%, effective June 1, 2022.

143.    On or about May 17, 2022, Pirelli announced price increases of up to 10% for car and light truck tires, effective on June 15, 2022.

144.    On or about May 24, 2022, Yokohama announced a price increase on its consumer tires and commercial truck tires, effective July 1, 2022.

145.    On or about June 6, 2022, Bridgestone announced price increases of up to 10% across its portfolio of consumer tires, effective July 1, 2022.

146.    On or about June 10, 2022, Sumitomo announced price increases on Falken-brand passenger, light truck and medium truck products, effective July 1, 2022.

147.    On or about June 15, 2022, Goodyear announced price increases for all Goodyear- and Cooper-brand consumer tires of up to 10%, and on commercial truck tires by up to 6%, effective July 1, 2022.[32]

148.    On or about June 27, 2022, Toyo announced that it would increase the dealer base prices on select passenger car, light truck, and commercial tire patterns of up to 5%, effective August 1, 2022.

149.    On or about September 8, 2022, Bridgestone announced a price increase for consumer and commercial tires, effective October 1, 2022.

150.    On or about December 12, 2022, Pirelli announced price increases of up to 10% for car and light truck tires, effective January 15, 2022.

151.    On or about December 13, 2022, Bridgestone price increases for Bridgestone, Firestone, and Fuzion passenger and light truck tires, effective January 1, 2023.

152.    On or about December 13, 2022, Michelin announced price increases across its brands by up to 9% on select passenger and light truck tires, effective January 1, 2023.

153.    On or about April 7, 2023, Sumitomo announced price increases on Falken brand passenger, light truck, and medium truck tires of up to 7%, effective May 1, 2023.

154.    On or about October 9, 2023, Sumitomo announced price increases of up to 6% on select Falken passenger and light trucks, effective November 1, 2023.

155.    All of the Defendants cited raw-materials and other inflation-impacted costs for the need to raise prices throughout the Class Period.[33]

156.    Goodyear, however, admitted that the increase in prices for Class Tires exceeded

---

[32] *Id.*

[33] *See, e.g.,* https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1

any increase in manufacturing costs. On May 6, 2022, Goodyear's Chief Financial Officer, Darren Wells, stated that "our increase in the replacement tire prices more than offset our costs," and reiterated that point several times throughout the call. He went on to state, "[n]ow with the recent announcements that have been made, I think we feel like our competitors are catching up."[34]

157.    From May 2021 to May 2023, the average price of Class Tires rose 21.4%, more than 70% higher than core inflation.[35] As the economy slowed in 2023, many of the costs that drove inflation dissipated, yet Defendants believed they could maintain higher prices and in fact did so.[36]

158.    Absent an agreement to fix prices, Defendants would have competed over market share by undercutting each other's prices rather than implementing lockstep price increases.

### D.    Defendants Signaled to Each Other That Pricing Would Remain High and Monitored Competitor Price Announcements

159.    On November 5, 2021, Goodyear's CEO Rich Kramer stated during an earnings call with investors: "So we monitor all those tire manufacturers that are out there. And what we've seen that they've all announced at least three price increases this year . . ."[37]

160.    On February 11, 2021, Mr. Kramer stated on another earnings call: "It's a really very, very good constructive pricing environment that we've seen right now, probably the best in recent memory . . . . If we could make more, we can actually even sell more in the environment

---

[34] https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022-results-earnings-call

[35] https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices

[36] *Id*.

[37] https://seekingalpha.com/article/4466211-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q3-2021-results-earnings-call

that we're seeing."[38]

161.    Darren Wells, Goodyear's CFO, stated on a Q4 2021 earnings call: "There are nine competitors that we tend to track and seven out of the nine have announced price increases in the first quarter. And one of the ones who hadn't raised prices right at the end of last year, so we are seeing very consistent pricing across all the significant industry players."[39]

162.    On a Q3 2022 earnings call, when asked by an analyst, "can you just maybe give us some color on what you're seeing with regard to price discipline? Do you think that the industry is going to kind of take the tack [sic] of trying to support pricing and in order to compensate for inflation?," Goodyear CEO Kramer answered: "So I would say, yes, I think that there is an acknowledgment of what price and mix has to do in the marketplace to deal with the environment we're in."[40]

163.    During a Q1 2022 earnings call, Continental CFO Katja Dürrfeld referenced sustainable pricing several times, including: "[t]o mitigate the broad inflationary headwinds, implementation of sustainable pricing is mandatory."[41]

164.    In 2022, Toyo CEO Michael Graber stated that "[p]rice increases have been a necessary counteraction to increased costs in raw materials, logistics and labor for Tokyo and everyone else in the industry."[42]

---

[38] https://seekingalpha.com/article/4486435-goodyear-tire-and-rubber-companys-gt-ceo-rich-kramer-on-q4-2021-results-earnings-call

[39] *Id.*

[40] https://seekingalpha.com/article/4551459-goodyear-tire-and-rubber-co-gt-q3-2022-earnings-call-transcript

[41] https://seekingalpha.com/article/4510196-continental-aktiengesellschafts-cttaf-management-on-q1-2022-results-earnings-call-transcript

[42] https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors

165.    On June 17, 2022, Nokian announced that it had "succeeded in implementing price increases to mitigate cost inflation."[43]

166.    The frequency of Defendants' price announcements and public signaling and the coordinated nature of the price hikes, such as the effective date and the specific products affected, ensured that the conspiracy would be effective.

167.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class paid higher prices for Class Tires sold by Defendants than they would have in a competitive market.

## V.    TRADE AND COMMERCE

168.    During the Class Period, each Defendant and/or one or more of its subsidiaries sold Class Tires in the United States in a continuous and uninterrupted flow of interstate and foreign commerce, including through and into this District.

169.    During the Class Period, Defendants collectively controlled a substantial portion of the market for Class Tires in the United States.

170.    The activities of Defendants in connection with the production, sale, and/or importation of Class Tires, and the conduct of Defendants and their co-conspirators as alleged herein: (a) affected United States interstate commerce; (b) affected United States import trade or commerce; and/or (c) had a direct, substantial, and reasonably foreseeable effect on United States domestic trade or commerce and/or United States import trade or commerce. Given the marketing, importation, and sales of Class Tires in the United States by Defendants, and the volume of affected

---

[43] https://www.reuters.com/business/autos-transportation/finlands-nokian-tyres-lifts-sales-outlook-despite-russia-uncertainty-2022-06-17/#:~:text=%22However%2C%20tire%20demand%20has%20remained,it%20said%20in%20a%20statement.

commerce, as alleged herein, such effects were direct and substantial.

171.    In addition, because the United States is one of the world's largest markets for Class Tires, it is reasonably foreseeable that Defendants' wrongful conduct would raise and artificially inflate prices for Tires sold in the United States and would have an effect on United States domestic trade or commerce and/or United States import trade or commerce.

172.    As a result of Defendants' conduct, Plaintiff and members of the proposed Class paid more for Tires during the Class Period than they would have in a competitive market and thus sustained injuries to their business or property in violation of Section 1 of the Herman Act.

## VI.    CLASS ACTION ALLEGATIONS

173.    Plaintiff brings this action on behalf of herself and under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons and entities in the United States that purchased Class Tires directly from any of the Defendants and/or their subsidiaries or affiliates from March 7, 2020, to the present.

174.    Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

175.    *Numerosity*. The Class is so numerous as to render individual joinder of claims impracticable. Although the precise number is unknown, Plaintiff alleges on information and belief that the Class contains at least tens of thousands of members geographically dispersed throughout the United States. The true number of Class members is known to Defendants through their sales records and files, however, thus the Class can be notified of the pendency of this action through electronic mail, first class mail and/or by published notice.

176.    *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class because all claims arise from the same course of conduct by Defendants and the relief sought within

the Class is common to each member.

177.    *Existence and Predominance of Common Questions.* Common questions of law and fact exist as to all members of the Class and predominate over any question affecting only individual Class members. These common legal and factual questions, each of which also may be certified under Rule 23(c)(4), include but are not limited to the following:

A.    Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to restrain trade by fixing, raising, maintaining, and/or stabilizing prices of Tires sold in the United States;

B.    The duration of the conspiracy alleged herein, and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

C.    Whether the alleged conspiracy violated the antitrust laws;

D.    Whether the conduct of Defendants and their co-conspirators, caused Plaintiff and Class members to suffer an injury to their business or property;

E.    Whether the conduct of Defendants and their co-conspirators caused the prices for Tires sold in the United States to be higher than they would be in a competitive market;

F.    Whether Plaintiff and other members of the class are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

G.    The appropriate class-wide measure of damages.

178.    These and other questions of law or fact are common to the members of the Class and predominate over any questions affecting only individual members of the Class.

179.    *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys that are highly experienced in complex

litigation including complex antitrust class action litigation, and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interest in this action that is adverse or antagonistic to the interests of the Class.

180.    *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens on the Court and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be feasible for the members of the Class to seek redress for the violations of law alleged herein.

181.    Furthermore, the Class may be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## VII.    ANTITRUST INJURY

182.    Defendants' anticompetitive conduct had the following effects, among others:

    A.    Price competition for Tires was restrained or eliminated;

    B.    The prices of Tires were fixed, raised, stabilized, and/or maintained at artificially high levels;

    C.    Purchasers of Tires were deprived of free and open competition;

    D.    Purchasers of Tires paid artificially inflated prices; and

    E.    Purchasers of Tires sustained an injury to their business or property.

183.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators

was to raise, fix, or maintain the price of Tires. As a direct and foreseeable result, Plaintiff and the Class paid supra-competitive prices for Tires during the Class Period.

184.    By reason of the alleged violations of the antitrust laws, Plaintiff and the Class sustained injury to their businesses or property, having paid higher prices for Tires than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy and as a result have suffered damages.

185.    Defendants' acts in furtherance of the contract, combination, or conspiracy to restrain trade were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

186.    The injury to Plaintiff and the Class members is of the type that the antitrust laws were meant to prevent.

**FIRST CAUSE OF ACTION**

**VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

187.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

188.    The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.

189.    Defendants and their co-conspirators entered into and engaged in a contract, combination, or conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

190.    At least as early as four years prior to the filing of the lawsuit and continuing until the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement or understanding to restrain trade by fixing, raising, stabilizing, and/or maintaining prices for replacement tires.

191.    Defendants' anticompetitive acts had a direct, substantial, and foreseeable effect on interstate trade or commerce by causing prices for Tires to be higher than they otherwise would be in a competitive market.

192.    As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class were harmed in their businesses or property by paying inflated prices for Tires.

193.    In formulating and carrying out the alleged agreement or understanding to restrain trade, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth in this Complaint. Defendants' conspiracy had the following effects, among others:

    A.    Price competition in the market for Tires has been restrained, suppressed, and/or eliminated in the United States;

    B.    Prices for Tires sold by Defendants, their divisions, subsidiaries, and affiliates, and all of their co-conspirators have been fixed, raised, stabilized, and maintained at artificially high, non-competitive levels throughout the United States; and

    C.    Plaintiff and members of the Class who purchased Tires from Defendants, their divisions, subsidiaries, and affiliates, and all their co-co-conspirators, have been deprived of the benefits of free and open competition in the purchase of Tires.

194.    Defendants took all the actions alleged herein with the knowledge and intended effect that their actions would proximately cause the price of Tires to be higher than it would be but for Defendants' conduct.

195.    As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiff

and members of the Class were injured in their businesses or property and will continue to be injured in their businesses or property by paying more for Tires than they would have paid in the absence of the conspiracy.

196.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

## VIII.    REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, requests relief and pray for judgment against Defendants as follows:

197.    An Order certifying the Class under the appropriate provisions of Rule 23 (b)(2) and (b)(3) of the Federal Rules of Civil Procedure;

198.    An Order appointing Plaintiff as Class representative and appointing his counsel as Class Counsel;

199.    Declarations that Defendants' actions, as set forth above, are unlawful and in violation of the Sherman Act;

200.    An award to Plaintiff and the Class of actual damages trebled in an amount to be determined at trial;

201.    A permanent injunction under Section 16 of the Clayton Act enjoining Defendants from engaging in any conduct determined to be unlawful;

202.    An award to Plaintiff and the Class of pre- and post-judgment interest;

203.    An award to Plaintiff and the Class for their costs of suit, including reasonable attorneys' fees and expenses; and

204.    An award of such other relief as the Court may deem just and proper.

## IX.    DEMAND FOR JURY TRIAL

205.    Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.

Dated:  March 15, 2024                    Respectfully submitted,


                                          /s/ *Jeffrey J. Corrigan*
                                          Jeffrey J. Corrigan
                                          William G. Caldes (*pro hac vice forthcoming*)
                                          Jeffrey L. Spector (*pro hac vice forthcoming*)
                                          Cary Zhang (*pro hac vice forthcoming*)
                                          **SPECTOR ROSEMAN & KODROFF, P.C.**
                                          2001 Market Street, Suite 3420
                                          Philadelphia, PA 19103
                                          Tel: (215) 496-0300
                                          Fax: (215) 496-6611
                                          jcorrigan@srkattorneys.com
                                          bcaldes@srkattorneys.com
                                          jspector@srkattorneys.com
                                          czhang@srkattorneys.com

                                          David McLafferty (*pro hac vice forthcoming*)
                                          **MCLAFFERTY LAW FIRM, P.C.**
                                          923 Fayette Street
                                          Conshohocken, PA 19428
                                          Tel: (610) 940-4000, ext. 12
                                          dmclafferty@mclaffertylaw.com

                                          *Attorneys for Plaintiff*